## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TAYLOR DUMPSON,**<br><br>Plaintiff,<br><br>v.<br><br>**BRIAN ANDREW ADE,**<br><br>**EVAN JAMES MCCARTY,**<br><br>**ANDREW ANGLIN, in his personal capacity and d/b/a DAILY STORMER,**<br><br>and<br><br>**MOONBASE HOLDINGS, LLC, d/b/a ANDREW ANGLIN and/or DAILY STORMER,**<br><br>Defendants. | Case No. 1:18-cv-01011-RMC |

## JOINT MOTION

Plaintiff Taylor Dumpson and Defendant Evan James McCarty hereby jointly submit this motion seeking to dismiss Plaintiff's claims against Defendant McCarty as a result of a resolution the parties have reached in this matter. The parties' settlement agreement (the "Agreement") was extensively negotiated at arm's-length, and both parties believe it to be a just and fair resolution of the claims by Plaintiff Dumpson against Defendant McCarty. A redacted version of the Agreement is attached as Exhibit A. The parties are willing to submit an unredacted copy of the Agreement to the Court under seal at the Court's request.

Pursuant to ¶11 of the Agreement, Plaintiff Dumpson and Defendant McCarty respectfully request that this Court (1) dismiss the claims against Defendant McCarty, and (2) retain jurisdiction

to enforce the Agreement for three years after the Effective Date of the Agreement.  The Effective

Date is defined in the Agreement as "the date on which this Agreement is fully executed by all

Parties."  *See* Ex. A, ¶ F.  The Agreement was fully executed on December 11, 2018.

For the foregoing reasons, Plaintiff Dumpson and Defendant McCarty respectfully request

that this Court (1) dismiss the claims against Defendant McCarty, and (2) retain jurisdiction to

enforce the Agreement for three years after the Effective Date of the Agreement.


Dated: December 18, 2018

Respectfully submitted,

*/s/ Ragan Naresh*

Ragan Naresh (D.C. Bar No. 984732)
**KIRKLAND & ELLIS LLP**
655 15th St. NW, #1200
Washington, D.C. 20005
(202) 879-5000
ragan.naresh@kirkland.com

*Counsel for Plaintiff*



*/s/ Evan J. McCarty (with permission)*

Evan J. McCarty
5010 Saxon Way
Eugene, OR 97405

*Defendant*

# EXHIBIT A

# SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT ("Agreement") is made by and between Taylor Dumpson ("Plaintiff") and Evan James McCarty ("Defendant").

## DEFINITIONS

A. "Doxxing" means "publicly disclosing the private information of a person, or prominently promoting or amplifying the potentially obscure but non-private information of a person (such as name, address, phone number, email, employment, family information, location information, financial information, medical information, etc.), in order to encourage, assist, or incite others to harass, troll, or engage in hateful activity toward that person."

B. "Complaint" shall refer to the First Amended Complaint filed in the Lawsuit.

C. "Parties" shall refer to Plaintiff and Defendant, collectively.

D. "Lawsuit" shall refer to *Dumpson v. Brian Andrew Ade, et al.*, Case No. 1:18-cv-01011-RMC (D.D.C.).

E. "Hateful activity" means "an activity that incites or engages in violence, intimidation, harassment, threats, or defamation targeting an individual or group based on the target's actual or perceived race, color, religion, national origin, ethnicity, immigration status, gender, gender identity, sexual orientation, or disability."

F. "Effective Date" shall refer to the date on which this Agreement is fully executed by all Parties.

G. "Trolling" means "mocking, insulting, harassing, threatening, humiliating, defaming, and/or intimidating a targeted person through communications, typically—but not exclusively—online."

H. "Troll storms" means "contemporaneous trolling by multiple individuals against a common target, with or without the presence of a conspiracy or coordination."

## WITNESSETH:

**WHEREAS**, Plaintiff has filed the Lawsuit alleging that Defendant, amongst other defendants, (1) interfered and aided and abetted interference with Plaintiff's right to full and equal enjoyment of places of public accommodation under the D.C. Human Rights Act; (2) interfered and aided and abetted interference with Plaintiff's right to equal opportunity to education under the D.C. Human Rights Act; (3) engaged in bias-related stalking, aiding and abetting of stalking, and conspiracy to commit stalking in violation of District of Columbia law; and (4) intentionally inflicted emotional distress and conspired to intentionally inflicted emotional distress upon Plaintiff;

**WHEREAS,** Plaintiff's Complaint seeks declaratory and injunctive relief as well as compensatory and punitive damages;

**WHEREAS**, the Parties seek to enter into this Agreement for the purposes of (1) resolving Plaintiff's claims against Defendant; (2) providing restitution to Plaintiff from Defendant; (3) assisting Plaintiff in her claims against other defendants; (4) furthering racial and social justice; and (5) educating Defendant about racial and social justice; and

**WHEREAS**, Defendant seeks to take responsibility for his actions, which actions are not necessarily those enumerated above, and demonstrate remorse for those certain acts he admits to have taken;

**WHEREAS**, Defendant admits that he published certain statements about Plaintiff on certain social media as referenced below;

**WHEREAS,** Defendant seeks to assist Plaintiff in the prosecution of her case against the remaining defendants, as well as to assist civil rights organizations with their ongoing efforts to redress hate and bigotry;

**WHEREAS**, Plaintiff seeks closure and peace of mind on this matter, and to assist civil rights organizations with their ongoing efforts to redress hatred and bigotry; and

**NOW, THEREFORE**, for good and sufficient consideration set forth herein, it is agreed by and between the Parties as follows:

1. 

2. Apology.

   a. Defendant shall issue a written, sincere, and thorough personal apology to Plaintiff. Defendant shall also issue such personal apology directly to Plaintiff in a video conference, which may be recorded at Plaintiff's discretion for the general purposes of civil rights advocacy, outreach, and educational activities. If Plaintiff chooses to use a video recording of the apology for such a purpose, at Defendant's request, the video shall be edited to ensure that it does not identify Defendant by image, picture and/or name. Moreover, if Plaintiff chooses to use a video recording of the apology for the purposes set forth in this paragraph, Defendant shall have the opportunity to review the recording reasonably in advance of any publication of same, for the purpose of ensuring compliance with this Agreement so as to allow for objections should Defendant believe the contemplated publication does not comply, and further to advise as to whether his image, picture and/or name can be shown. Furthermore, if Plaintiff chooses to record the video apology, Defendant shall be entitled to a copy of that recording and to use the same in a manner consistent with the purposes of this Agreement. Plaintiff may request, at her discretion, that Defendant instead deliver this

personal apology in person; provided, however, that such request will allow reasonable time to coordinate such a meeting. Plaintiff may have persons of her choosing present for the apology; provided, however, that Defendant receive reasonable prior notice of such attendees.

b. Defendant's apology at a minimum shall:

   i. Make admissions consistent with paragraph 1 above.
   ii. Acknowledge how trolling of the type in which he engaged can cause harmful effects including emotional and physical harm;
   iii. Sincerely recognize and apologize for the harm he caused;
   iv. Renounce white supremacy, white nationalism, sexism, and other forms of hate and bigotry; and
   v. Describe the steps he is taking to confront his own bigotry, such as counseling and education efforts.

c. Defendant shall issue the apology described in this section on a date to be mutually agreed upon but in no event later than 90 days after the Effective Date. This delay is intended to give Defendant the opportunity to continue to engage in some of the anti-hate training, continuing education, and community service components of this Agreement prior to apologizing to Plaintiff, with the goal of producing a more fulsome reconciliation.

d. The Parties intend that this Agreement become a model for future reconciliation, restitution, and education following the occurrence of hateful activities. Therefore, Plaintiff, the Lawyers' Committee for Civil Rights Under Law ("Lawyers' Committee"), and the Washington Lawyers' Committee for Civil Rights and Urban Affairs ("Washington Lawyers' Committee") may use the apology and this Agreement and any information obtained pursuant to it for the general purposes of their civil rights advocacy, outreach, and educational activities. These uses include but are not limited to:

   i. Issuing press releases that reference the terms of the Agreement and include some or all of the apology, provided that Defendant is first provided the opportunity to reasonably review the language of such press release, solely to ensure conformity with this Agreement, and further provided that Defendant is provided the opportunity to determine whether he can be identified by name, face and/or image. Plaintiff, the Lawyers' Committee, and the Washington Lawyers' Committee may publish the press releases on their public websites;
   ii. Consistent with paragraph 2(d)(i) above, referring to the apology in responding to interviews or press inquiries; and
   iii. Consistent with paragraph 2(d)(i) above, using the terms of the Agreement and the apology in ongoing community training, outreach, and educational materials.

3

However, at no time may the Lawyers' Committee and Washington Lawyer's Committee affirmatively identify Defendant by name or use the apology video without Defendant's face and image obscured in its training and educational materials unless Defendant agrees to the contrary.

3. <u>Cooperation.</u>

a. Defendant shall recount and admit, in detail in a sworn affidavit, the facts of his involvement in this case, including disclosing any relevant information that would have been discoverable. Defendant shall produce this sworn affidavit no later than 60 days after the Effective Date.

b. Defendant shall cooperate in good faith with Plaintiff in her prosecution of her claims against all other defendants in this case. This includes, but is not limited to:

   i. Disclosing any and all relevant evidence (including communications with others involved in trolling Plaintiff) in his possession, custody and/or control;
   ii. Issuing a sworn declaration of Defendant's actions and his involvement with other defendants (including how others' speech or actions influenced Defendant's speech or actions); and
   iii. Testifying at trial in support of Plaintiff as a fact witness.

c. Defendant shall produce any and all relevant information in his possession, custody and/or control related to any other hateful activity, including trolling and troll storms. This includes, but is not limited to:

   i. Communications with other white supremacists regarding hateful activity;
   ii. Hateful materials Defendant has generated—including songs, audio, podcast interviews, writings, images, memes, posters, and video—and information about its dissemination; and
   iii. Providing information within Defendant's knowledge about his participation in the white supremacist community.

d. Defendant will comply with the initial set of requests, detailed in Appendix A, no later than 60 days after the Effective Date. If, after this initial production, Defendant discovers or recalls additional information relevant to any form of cooperation under this Agreement, he shall notify Plaintiff and produce such information to Plaintiff no later than fourteen (14) days thereafter. For other cooperation provisions in this section where deadlines are not otherwise noted, the Parties will work together in good faith to set up a cooperation schedule, recognizing that time is of the essence.

e. If Defendant needs to travel out of state in order to fulfill the requirements of this section (for example, to testify at trial), then the Parties shall coordinate same in good faith and shall discuss how to handle documented, reasonable travel expenses.

4. <u>Hateful Activity</u>.   Defendant shall not engage in any future hateful or illegal activity targeting Plaintiff or any future hateful or illegal activity targeting any other person in any forum. This includes but is not limited to trolling, doxxing, and participating in troll storms.

5. <u>Anti-Hate Training and Counseling</u>.   Defendant shall continue to undergo anti-hate training, which may include anti-racism training, anti-sexism training, implicit bias training, and personal therapeutic counseling focused on remediating hate and bigotry. This training shall include a minimum of one (1) year of sessions with a licensed therapist, or with a counselor with appropriate experience, who has appropriate experience, or with frequency determined by Defendant's therapist, but at a minimum every other week. Therapy will continue to include individual sessions, but may also include in-person, group, or virtual group sessions, as suggested by Defendant's therapist or counselor. Defendant shall continue to engage in this training in good faith with the goal of rehabilitating and educating himself, becoming more empathetic and tolerant, and developing an understanding of the experiences of others with different backgrounds.

Plaintiff's counsel shall work with Defendant in good faith to accomplish the goals of this section. Defendant shall propose a training plan to Plaintiff's counsel. Plaintiff's counsel shall have reasonable discretion to approve, modify, or reject all or part of the proposed training in advance. If Plaintiff's counsel does not approve of the proposed training, it will not satisfy the requirements of this section.

6. <u>Continuing Education</u>.   Defendant shall undertake good faith efforts to educate himself on race and gender issues through academic coursework. He shall take and satisfactorily complete at least four (4) courses, to be completed no later than three (3) years after the Effective Date.

Plaintiff's counsel shall work with Defendant in good faith to accomplish the goals of this section. Defendant shall propose coursework to Plaintiff's counsel no later than 45 days after the Effective Date. Plaintiff's counsel shall have reasonable discretion to approve, modify, or reject all or part of the proposed coursework in advance. If Plaintiff's counsel does not approve of the proposed coursework, it will not satisfy the requirements of this section. In the event that Defendant is unable, despite his best efforts, to attend academic classes to fulfill this section, the Parties will work together in good faith to develop alternative education options.

The Parties recognize that higher education can be expensive. In the event that financial costs pose a significant obstacle to accomplishing the goal of this section or the purposes of the Agreement as a whole, the Parties will work together in good faith to develop alternative educational options.

7. <u>Community Service</u>.   Defendant shall complete at least 200 hours of community service for one (1) or more charitable organizations whose mission(s) include(s) the furtherance of racial justice and civil rights, and/or direct services to communities of color. If, with reasonable effort, Defendant cannot identify sufficient opportunities to fulfill this community service requirement in his local area with a charitable organization whose

mission includes the furtherance of racial justice and civil rights and/or direct services to communities of color, Defendant may fulfill the requirement working with national charitable organizations whose mission include the furtherance of civil rights and/or direct services to communities of color. If Defendant cannot identify any such organization that will work with Defendant, the Parties will work together in good faith to develop an alternative plan for completing the community service. Defendant shall satisfy this requirement no later than three (3) years after the Effective Date.

Defendant has identified four community workshops and similar events that he has attended, as reflected in Appendix D. The parties agree that the time spent by Defendant attending these events shall be credited towards Defendant's community service obligations under this paragraph, provided that Defendant provide proof of his attendance and completion of these events, and author a writing demonstrating engagement with the material presented.

Plaintiff's counsel shall work with Defendant in good faith to accomplish the goals of this section. Defendant shall propose charitable organization(s) to Plaintiff's counsel no later than 60 days after the Effective Date. Plaintiff's counsel shall have reasonable discretion to approve or reject the proposed organization in advance. If Plaintiff's counsel does not approve the proposed organization, it will not satisfy the requirements of this section.

8. <u>Public Advocacy Against Hate</u>.  No sooner than one (1) year after the Effective Date, upon completion of his anti-hate training described in paragraph 5, with the recommendation of his counselor(s), and with Plaintiff's reasonable consent, Defendant shall undertake good faith efforts to advocate against hate, white supremacy, and bigotry. Defendant shall attempt to work with an organization that tries to counsel or de-radicalize white supremacists, such as Free Radicals.

This advocacy could take many forms, such as direct outreach to other white supremacists to attempt de-radicalization (with proper training), or contributing Defendant's performing arts skills to anti-hate and racial justice causes.

Plaintiff and her counsel shall work with Defendant in good faith to accomplish the goals of this section. Defendant shall propose an advocacy plan to Plaintiff's counsel. Plaintiff's counsel shall have reasonable discretion to approve, modify, or reject all or part of the advocacy plan.

In accordance with the advocacy plan and in consultation with his anti-hate organizational partner and with Plaintiff's counsel, Defendant shall undertake such advocacy for at least two (2) years.

9. <u>Released Claims</u>.  This Agreement fully and completely resolves the claims asserted by Plaintiff against Defendant in the Complaint. In exchange for Defendant's good faith compliance with all terms of this Agreement, Plaintiff agrees to release him from liability stemming from the May 2017 events alleged in the Complaint. The Parties agree and acknowledge this consideration is adequate and sufficient.

10. Compliance.  Defendant shall submit quarterly reports of his compliance with this Agreement to Plaintiff, through her designated counsel, due on the last day of each quarter, starting with the first complete quarter after the Effective Date. These reports shall contain sufficient information for Plaintiff to ascertain Defendant's compliance with all obligations, with appropriate documentation with respect to each obligation from his counselors, supervisors, teachers, and/or others similarly situated. The reports shall follow the format described in Appendix B.

Defendant shall promptly supplement a report upon reasonable prior request if a report is insufficient for Plaintiff to reasonably ascertain Defendant's compliance.

The reporting requirements of this section begin 90 days after the Effective Date and terminate three (3) years after the Effective Date.

Defendant shall preserve all records that are the source of, contain, or relate to any information pertinent to the obligations under this Agreement for four (4) years after the Effective Date. Upon reasonable notice and request, Plaintiff may inspect and copy such records during this time, or upon request by Plaintiff, Defendant shall provide copies of such records.

11. Jurisdiction.  The Parties agree to jointly file this Agreement with the United States District Court for the District of Columbia, in the matter captioned *Dumpson v. Ade, et. al.*, Case No. 18-cv-01011. The agreed-upon form of joint order is attached as Appendix C to this Agreement.  The joint motion shall request that the Court dismiss the claims against Defendant, while retaining jurisdiction to enforce the Agreement for three (3) years after the Effective Date.  Once Defendant has materially complied with his obligations under this Agreement, and no sooner than three (3) years from the Effective Date, Plaintiff shall move the Court for entry of an order dismissing him with prejudice.

Defendant does not contest the personal jurisdiction or subject-matter jurisdiction of the Court for purposes this Lawsuit, or for purposes of retaining jurisdiction to enforce the terms of this Agreement, if necessary.  Defendant also does not contest venue in the Court pursuant to 28 U.S.C. § 1391(b)(2).

12. Enforcement.  Plaintiff will provide written notice to Defendant regarding any failure to comply with the terms of this Agreement as soon as practicable after Plaintiff learns of a violation or an inability to satisfy the terms of this Agreement. The Parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Agreement. However, in the event of a failure by Defendant to perform in a timely manner any act required by this Agreement, or otherwise to act in conformance with any provision thereof, Plaintiff may move this Court to enforce the terms of this Agreement and to impose any remedy authorized hereunder.

Defendant agrees that if the court finds that he has breached his obligations under this Agreement, then Plaintiff will be entitled, as applicable, to recover damages flowing from such breach, specifically including, but not limited to, the recovery of Five Hundred Dollars and No Cents ($500.00) for each breach, to recover the costs and attorney's fees

incurred to recover under this Paragraph and to obtain other relief as permitted by law. It is expressly agreed that the non-exclusive damages set forth above in this Paragraph in the event of a breach are not a penalty, but are fair and reasonable in light of the difficulty of proving the value of damage in the event of such a breach.

Absent exigent circumstances, Plaintiff will allow Defendant thirty (30) days of providing written notice to cure a violation of this Agreement before seeking judicial intervention.

Failure by Plaintiff to enforce any provision of this Agreement shall not operate as a waiver of Plaintiff's right or ability to enforce any other provision of this Agreement.

13. <u>Costs and Fees</u>.   Except otherwise stated, no Party nor any Party's attorneys or other agents, shall seek reimbursement from another Party for costs, filing fees, attorneys', experts' or consultants' fees, or any other costs or expenses incurred in connection with the Lawsuit or this Agreement.

14. <u>Meaning of "Days"</u>.   All references to "days" mean calendar days, not business days.

15. <u>Confidentiality</u>.   The Parties agree that paragraph 1 of this Agreement is confidential. The Parties also agree that Appendix A is confidential, provided that any information obtained pursuant to this Agreement may be used provided it does not identify the Defendant by name, face, and/or image.   The Parties further agree that to the extent Plaintiff and/or her counsel wish to disclose the provisions in paragraphs 2-11 as part of their public advocacy and education efforts, any such disclosure shall not disclose Defendant by name, face, and/or image.   Thus, by illustrative example, after the Effective Date of this Agreement, consistent with all of the terms herein, Plaintiff and/or her counsel may issue a press release stating that Plaintiff has reached a settlement agreement with a defendant in the Lawsuit and that the settlement agreement contains provisions concerning an apology and obligations to cooperate, cease hateful activity, and engage in anti-hate training and continuing education, but the press release shall not identify the Defendant by name, face, and/or image.   To the extent an unredacted version of this Agreement is filed in Court, the parties shall comply with the rules governing the filing of documents under seal.

16. <u>Severability</u>.   The provisions of this Agreement are severable, and if any part of it is found to be illegal or unenforceable for any reason, the other parts shall remain fully valid and enforceable.   If any term or provision of this Agreement is held invalid or unenforceable in any jurisdiction, then, as to that jurisdiction, the Parties covenant and agree to use reasonable efforts to renegotiate such term or provision in order to provide a reasonably acceptable alternative that remains consistent with the basic collective purpose of this Agreement.

17. <u>Entire Agreement</u>.   This Agreement contains the full and entire understanding and agreement of the Parties regarding the subject matter hereof and supersedes any and all prior written or oral agreements, understandings and negotiations regarding same.   Any change or modification to this Agreement must be made in writing and will have no force

and effect until signed by all Parties.  This Agreement may be executed in more than one (1) counterpart, each of which is an original, but all taken together shall be deemed a single agreement.  This Agreement may be signed and transmitted electronically such as by scanning, e-mailing, or sending a fax and same shall constitute an original.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

Dated: 12|11|2018

By: _____
     Taylor Dumpson

By: _____
     Evan James McCarty

Dated: _____

IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

By: _____

Taylor Dumpson

Dated: _____

By: _____

Evan James McCarty

Dated: 12/10/18

10

## APPENDIX A













APPENDIX B

### *Anti-Hate Training/Counseling*

**Name of trainer/counselor:**

_____

_____

**Length of training/counseling:**

_____

_____

**Dates of training/counseling:**

_____

_____

_____

**Topics covered:** _____

_____

_____

**Reading and other materials assigned:**

_____

_____

_____

_____

**Progress made (to be completed by Mr. McCarty):**

_____

_____

_____

_____

**Progress made (to be completed by trainer/counselor):**

_____

_____

_____

_____

**Signature of trainer/counselor:**

_____

**Date:** _____

APPENDIX B

### *Continuing Education*

**Semester:**

_____

**Educational Institution/organization:**

_____

**Title of Course/seminar/workshop:**

_____

**Number of hours of class attended/length of event:**

_____

**Dates of classes/event(s) attended:**

_____

**Name of instructor/speaker:**

_____

**Major class assignments (please note any papers, presentations, research projects, etc.)/summary of material covered:**

_____

**Please attach a copy of the syllabus, programs, any work product/assignments completed for the class, other materials and/or final grade/transcript/report card.**

_____

**Cumulative number of courses successfully completed:**

_____

**Mr. McCarty's assessment of the course and what he learned:**

_____
_____

APPENDIX B

### *Community Service*

**Name of charitable organization:**

_____
_____

**Mission of the organization:**

_____
_____

**Contact person/supervisor at charitable organization (name, phone and email):**

_____
_____
_____

**Number of hours volunteer/service work completed at charitable organization:**

_____
_____

**Description of service work:**

_____
_____
_____

**Mr. McCarty's assessment of the organization, his service work, and what he learned:**

_____
_____

**Dates completed:**

_____
_____
_____
_____

**Name and signature of supervisor:**

_____

**Dated:** _____

APPENDIX B

*__Public Advocacy__*

**Please describe efforts taken to publicly advocate against hate, white supremacy, and bigotry:**

_____
_____
_____
_____
_____
_____
_____

**Name organizations whose goals are combating  hate with which you have worked:**

_____
_____
_____
_____
_____
_____
_____

**Mr. McCarty's assessment of his public advocacy and what he learned:**

_____
_____

**Please list hours and dates spent on each anti-hate advocacy effort and provide contact information for someone who can attest to hours spent:**

| Date | Activity | Hours spent | Supervisor/Witness |
|------|----------|-------------|--------------------|
|      |          |             |                    |
|      |          |             |                    |
|      |          |             |                    |
|      |          |             |                    |
|      |          |             |                    |
|      |          |             |                    |
|      |          |             |                    |
|      |          |             |                    |
|      |          |             |                    |
|      |          |             |                    |
|      |          |             |                    |
|      |          |             |                    |
|      |          |             |                    |

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TAYLOR DUMPSON,** | |
| Plaintiff, | |
| v. | |
| **BRIAN ANDREW ADE,** | |
| **EVAN JAMES MCCARTY,** | Case No. 1:18-cv-01011-RMC |
| **ANDREW ANGLIN, in his personal capacity and d/b/a DAILY STORMER,** | |
| and | |
| **MOONBASE HOLDINGS, LLC, d/b/a ANDREW ANGLIN and/or DAILY STORMER,** | |
| Defendants. | |

**[PROPOSED] ORDER**

Upon consideration of the joint motion filed on [DATE] by Plaintiff Taylor Dumpson and

Defendant Evan James McCarty pursuant to ¶ 11 of their settlement agreement (the "Agreement"),

it is hereby ORDERED that the claims against Defendant McCarty are dismissed.

It is further ORDERED that this Court shall retain jurisdiction to enforce this Agreement

for three years after the Effective Date of the Agreement.  The Effective Date is defined in the

Agreement as "the date on which this Agreement is fully executed by all Parties."  The Agreement

was fully executed by all Parties on December 11, 2018.

SO ORDERED.

Date: _____          _____
                                              United States District Judge

2

# **Exhibit D**

Summary of educational events attended by Evan McCarty:

City Club of Eugene: Free Speech vs. Hate Speech- July 20th, 2018 (City Club of Eugene)

The Kim Sticka PTSD Music and Arts Foundation Symposium- July 21st, 2018 (The Shedd Institute)

Immigrant Solidarity Workshop: Countering Measure 105- September 16th, 2018 (First Congregational Church of Eugene)

"Nativism and White Supremacy: Oregon, the U.S., and Europe"- November 1st, 2018 (University of Oregon)