# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAYLOR DUMPSON,<br><br>    Plaintiff,<br><br>    v.<br><br>BRIAN ANDREW ADE,<br><br>ANDREW ANGLIN, in his personal capacity and d/b/a DAILY STORMER,<br><br>and<br><br>MOONBASE HOLDINGS, LLC, d/b/a ANDREW ANGLIN and/or DAILY STORMER,<br><br>    Defendants. | Case No. 1:18-cv-01011-RMC |

## RESPONSE TO ORDER TO SHOW CAUSE

Plaintiff Taylor Dumpson ("Plaintiff") submits this response to the Court's February 6, 2019 Order to Show Cause (Dkt. 32) in order to demonstrate that Plaintiff has been diligent in prosecuting this case since its inception. As detailed below, Plaintiff has been gathering the documentary evidence that is necessary to support a motion for default judgment against Defendants Brian Andrew Ade, Andrew Anglin, and Moonbase Holdings, LLC ("Moonbase") from third parties for several months, and anticipates filing that motion in April 2019. Plaintiff is prepared to provide additional information should the Court require it, and is available at the Court's convenience for a status conference should the Court find it useful.

## BACKGROUND

On April 30, 2018, Plaintiff filed the complaint in this case against Defendants Brian Andrew Ade, Evan James McCarty, Andrew Anglin, and Moonbase. (Dkt. 1). Plaintiff alleged that Defendants had conspired to perpetrate a campaign of online harassment against her that violated the District of Columbia Human Rights Act of 1977, D.C. Code § 2-1401.01 et seq., the Bias-Related Crime Act of 1989, D.C. Code § 22-3701 et seq., and District of Columbia tort law.

On May 1, 2018, Defendant Ade was served in person with a summons and complaint, rendering his answer to the complaint due on May 22, 2018. (Dkt. 7.) Plaintiff received no response from Defendant Ade. Accordingly, on June 19, 2018, Plaintiff requested that the Clerk of Court enter default for Mr. Ade (Dkt. 9), and on June 19, 2018, the Clerk of Court entered default (Dkt. 10).

Beginning in May 2018, Plaintiff made extensive efforts to serve Defendant Anglin in his personal capacity and as registered agent for Defendant Moonbase Holdings, LLC, including attempting to serve Mr. Anglin in person at thirteen different addresses associated with him, and attempting to serve him via certified mail at his P.O. Box and six addresses. On July 24, 2018, Plaintiff moved for an extension of time to serve Mr. Anglin and for permission to serve Mr. Anglin by publication, (Dkt. 14), which the Court granted on July 30, 2018, (Dkt. 15). Service by publication was completed on November 15, 2018. (Dkt. 23.) Plaintiff moved for default against Anglin on December 10, 2018, (Dkt. 26–27), and default was entered on December 11, 2018. (Dkt. 28.)

After Plaintiff's efforts to serve Moonbase via its registered agent Andrew Anglin failed, on July 10, 2018, Plaintiff served Moonbase by serving the Secretary of State of Ohio, pursuant to Ohio Rev. Code § 1705.06(H)(2), which allows for service of a limited liability company registered in Ohio via the Secretary of State when the registered agent cannot be found or no longer

has the address stated in the records of the Secretary of State.  (Dkt. 19.)  Plaintiff received no response from Moonbase, and accordingly, on September 25, 2018, Plaintiff requested that the Clerk of Court enter default for Moonbase.  (Dkt. 18.)  On October 3, 2018, the Clerk of Court entered default for Moonbase.  (Dkt. 20.)

Defendant McCarty was served in person with a summons and complaint on May 1, 2018, rendering his answer to the complaint due on May 22, 2018.  (Dkt. 7.)  A representative of Defendant McCarty contacted counsel for Plaintiff in June 2018.  After extensive and ongoing negotiations that spanned several months and necessitated dozens of exchanges of drafts and telephone conferences, Plaintiff and Defendant McCarty reached a settlement agreement on December 11, 2018.  On December 18, 2018, Plaintiff and Defendant McCarty filed a joint motion to dismiss the claims against Defendant McCarty pursuant to the settlement agreement.  (Dkt. 30.)  The Court issued a minute order dismissing the claims against Defendant McCarty on January 25, 2019.

On February 6, 2019, the Court issued an Order to Show Cause, requiring that Plaintiff show cause why the case should not be dismissed for failure to prosecute. (Dkt. 32.)

**DISCUSSION**

"[W]hether there has been a 'failure to prosecute' is to be determined upon a consideration of all pertinent circumstances."  *Cherry v. Brown-Frazier-Whitney*, 548 F.2d 965, 969 (D.C. Cir. 1976).  Dismissal is not warranted "when the plaintiff has been diligent throughout."  *Id.*  Rather, it is proper only if "in view of the history of the litigation, the litigant has failed to exercise reasonable diligence in pursuing the case." *Ames v. Standard Oil Co. (Indiana)*, 108 F.R.D. 299, 301 (D.D.C. 1985).  Here, Plaintiff has diligently litigated this case, and has been preparing a motion for default judgment since November 2018.

First, as a general matter, Plaintiff has been "diligent throughout" in pursuing this case. *Cherry*, 548 F.2d at 969. Plaintiff has complied with all deadlines imposed by both the Rules and this Court. As described above, Plaintiff promptly initiated service of process, and in fact went to great lengths to ensure that each defendant was served, including attempting personal service of Defendant Anglin at thirteen addresses, service by certified mail at seven addresses, and ultimately, undergoing the lengthy process of service by publication. Additionally, Plaintiff has promptly sought an entry of default against each defendant, each of which has been entered by the Clerk of Court. (Dkts. 10, 20, 28.)

Second, Plaintiff began preparing a motion for default judgment promptly once it became clear that numerous defendants intended to default. Plaintiff began the process of gathering updated medical records from third parties in November 2018, and also began preparing the briefing and necessary affidavits to provide the Court proof of damages. Additionally, Plaintiff has spent significant time researching the need for limited discovery in this case. Recently, other federal courts considering claims against Defendants Anglin and Moonbase have permitted discovery regarding their net worth and financial situation. *See Obeidallah v. Anglin*, No. 2:17-cv-720 (S.D. Ohio August 20, 2018), Dkt. 39 (granting limited discovery in aid of default judgment); *Gersh v. Anglin*, No. 9:17-cv-00050-DLC-JCL (D. Mont. Jan. 18, 2019), Dkt. 131 (granting motion to compel discovery regarding net worth).[1] Though Plaintiff has concluded that such discovery is not presently necessary in this case, research into this matter has also taken considerable time.

---

[1] *Obeidallah* was filed on August 16, 2017, and default was entered on July 3, 2018. On November 16, 2018, Obeidallah filed a motion for default judgment, as well as a motion for additional discovery, which was granted in part. In *Gersh*, Anglin did not default.

4

Currently, Plaintiff is awaiting receipt of medical records that will form the basis of her claim for damages, including records related to mental health counseling Plaintiff received in the wake of the harassment. Requesting Plaintiff's medical records has proven to be a time-intensive process. Plaintiff submitted requests for four sets of relevant medical records beginning in November of 2018, and is still waiting to receive some of these records. To acquire the records, counsel for Plaintiff must obtain medical authorizations from Plaintiff, submit them to her healthcare providers, and then wait as the healthcare provider completes its internal process for locating and transmitting the records. Moreover, in some cases, it has taken several rounds of back-and-forth communication with these providers in order to establish the proper entity and process for submitting the requests. These medical records will be particularly relevant to the Court's consideration of Plaintiff's request for damages for pain and suffering. *See* Am. Compl. ¶ 240 (requesting damages for pain and suffering); *GAG Enters., Inc. v. Rayford*, 312 F.R.D. 230, 234 (D.D.C. 2015) ("Plaintiff must prove its entitlement to the amount of monetary damages requested.") For this reason, Plaintiff cannot complete her motion for a default judgment until she has received these records.

Finally, Plaintiff's motion for default judgment has not been unduly delayed, as less than three weeks have passed in which Plaintiff could have moved for a default judgment. Where, as here, a complaint alleges a conspiracy as to a group of defendants, courts have held that a default judgment against one defendant would be improper while the case is still pending against others. *Frow v. De La Vega*, 82 U.S. 552, 554 (1872). Because charges of conspiracy were pending against these three defendants as well as Defendant McCarty, against whom default had not been entered, Plaintiff could not move for a default judgment until the case was resolved as to Defendant McCarty. As explained above, settlement negotiations between Plaintiff and Defendant McCarty

lasted for many months, and the claims against Defendant McCarty were not dismissed until January 25, 2019. Thus, less than three weeks have passed in which Plaintiff could have moved for a default judgment against the other defendants. *C.f. Clark v. World Airways, Inc.*, Civ. No. 77-0771, 1980 WL 271, at *1 (D.D.C. Oct. 24, 1980) (noting in dicta that failure to move for entry of default after *two years* "might well be regarded . . . a failure to prosecute").

Plaintiff has drafted a motion for default judgment and intends to file it as soon as she receives the necessary medical records and incorporates them into her proof of damages. Plaintiff anticipates receiving the remaining records by April 2019 and will move for default promptly thereafter, and will notify the Court immediately if it appears that more time will be required. Plaintiff Dumpson "has been diligent throughout" in litigating this case. *Cherry*, 548 F.2d at 969. She will continue to exercise this diligence, and will move for default judgment as soon as possible.

Dated: February 12, 2019

Respectfully submitted,

*/s/ Ragan Naresh*
Jon Greenbaum (D.C. Bar No. 489887)
David Brody (D.C. Bar No. 1021476)
Becky L. Monroe (DC Bar admission pending)
Arusha Gordon (D.C. Bar No. 1035129)
**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**
1500 K St. NW, Suite 900
Washington, DC 20005
(202) 662-8600
dbrody@lawyerscommittee.org
agordon@lawyerscommittee.org

Dennis A. Corkery (D.C. Bar No. 1016991)
Jonathan Smith (D.C. Bar No. 396578)

**WASHINGTON LAWYERS'**
**COMMITTEE FOR CIVIL RIGHTS AND**
**URBAN AFFAIRS**
11 Dupont Circle, Suite 400
Washington, D.C. 20036
(202) 319-1000
Dennis_Corkery@washlaw.org
Jonathan_Smith@washlaw.org

Emily Hughes (D.C. Bar No. 984580)
Ragan Naresh (D.C. Bar No. 984732)
Tracie Bryant (D.C. Bar No. 1018783)
**KIRKLAND & ELLIS LLP**
655 15th St. NW, #1200
Washington, D.C. 20005
(202) 879-5000
emily.hughes@kirkland.com
ragan.naresh@kirkland.com
tracie.bryant@kirkland.com